JEAN LIONI *vs.* STANLEY F. MARR & another, executors.

Suffolk.    February 5, 1946. — June 29, 1946.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence,* One owning or controlling real estate, Violation of law. *Nuisance. Way,* Public: nuisance. *Municipal Corporations,* By-laws and ordinances.

In the absence of a violation of an applicable statute or municipal ordinance or by-law, the owner of a building was not liable, either on the ground of negligence or for maintaining a nuisance, for personal injuries caused to a traveller on a contiguous public sidewalk who fell down an unguarded flight of stairs running on the premises downward from the sidewalk to a cellar doorway.

The facts, that a municipal building law in 1906 required that construction of any proposed building should not be proceeded with until a detailed statement and plans therefor had been filed by the landowner with the building commissioner and approved by him and that the construction should be in accordance therewith; that such a statement and plans as to a certain building had been so filed and approved in 1906 and showed a gate at the top of stairs on the premises of the landowner leading from a contiguous public sidewalk to a basement; and that in 1943, when a traveller on the sidewalk fell down the stairway, there was no such gate, would not have warranted a finding that the absence of the gate in 1943 was in violation of the building law, where there was no evidence as to the circumstances of the absence of the gate, and it appeared that the building law had been substantially amended between 1906 and 1943 in particulars not shown by the evidence.

There can be no judicial notice of municipal ordinances and by-laws.

TORT. Writ in the Superior Court dated December 22, 1943.

The action was tried before *Goldberg,* J.

*D. H. Fulton,* for the plaintiff.

*K. C. Parker,* for the defendants.

SPALDING, J. This action of tort to recover compensation for personal injuries comes here on the plaintiff's exceptions to the direction of a verdict for the defendant and to a ruling on evidence. The original defendant, since deceased and now represented by her executors, will, for convenience, be called herein the defendant.

The jury could have found these facts: At the time of the accident the defendant was the owner of a building on the corner of St. Mary's and Beacon streets in Brookline. In the rear of the building, and adjacent to the sidewalk on St. Mary's Street, is a flight of twelve steps descending to a cellar doorway which is located seven and one half feet below the sidewalk level. At the top of the steps and contiguous to the sidewalk is a curbing which is two and one half to three inches above the sidewalk. The steps including the curbing were "maintained by the . . . defendant [and] . . . were located on her premises and in her general control." There was no gate or other barrier at the entrance to the steps.

At about 2 A.M. on September 10, 1943, the plaintiff and her companion were walking on the westerly sidewalk on St. Mary's Street which bordered on the defendant's property. The plaintiff was close to the inner edge of the sidewalk. Frightened or confused by an approaching dog which ran between her and her companion, she stepped aside, caught her foot on the above described curbing, fell to the bottom of the steps and was injured. It was agreed that the sidewalk on which the plaintiff was walking was a public way. The place where the accident occurred was dimly lighted "by reason of dim out restrictions" then obtaining.

The plaintiff's declaration was in three counts. The first count was based on negligence, the second alleged a nuisance, and the third alleged the creating and maintaining of an illegal structure.

Under the rule of law stated by the American Law Institute the judge probably would have been obliged to submit the case to the jury on the first and second counts. That rule, which is supported by the great weight of authority, [1] is that "A possessor of land who creates or maintains

---

[1] *Barnes* v. *Ward*, 9 C. B. 392. *Louisville & Nashville Railroad* v. *Anderson*, 39 Fed. (2d) 403 (C. C. A. 5). *Bennett* v. *Citizens State Bank*, 100 Kans. 90. *Buesching* v. *St. Louis Gaslight Co.* 73 Mo. 219. *Downes* v. *Silva*, 57 R. I. 343. *Humphries* v. *Union & Glenn Springs Railroad*, 84 S. C. 202. *Temperance Hall Association, of Trenton* v. *Giles*, 4 Vroom, 260. *Hutson* v. *King*, 95 Ga. 271. *Beck* v. *Carter*, 68 N. Y. 283. *White* v. *Suncook Mills*, 91 N. H. 92 (1940). See also note 14 Am. L. R. 1397; Prosser on Torts, § 76.

thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them." Restatement: Torts, § 368. But the law in this Commonwealth is otherwise. *Howland* v. *Vincent,* 10 Met. 371. *McIntire* v. *Roberts,* 149 Mass. 450. *Mead* v. *Strauss,* 202 Mass. 399, 401. *Carney* v. *Proctor,* 237 Mass. 203. *Richardson* v. *Whittier,* 265 Mass. 478. See *Quigley* v. *Clough,* 173 Mass. 429; *Noyes* v. *Carr,* 228 Mass. 339. Our attention has been directed by the plaintiff to the comment of the Massachusetts annotators of the Restatement to the effect that although our decisions seem to be contrary to the Restatement they actually are not. We cannot agree. The decisions of this court, and especially *Howland* v. *Vincent,* 10 Met. 371, and *McIntire* v. *Roberts,* 149 Mass. 450, leave no doubt that the rule in this Commonwealth is different and that on the facts here the defendant would not be liable at common law either for negligence or for maintaining a nuisance. In the *McIntire* case the plaintiff while walking on the sidewalk of a public way was accidentally pushed by other persons into the defendants' unguarded elevator well which opened on to the sidewalk. In upholding the direction of a verdict for the defendants this court, per Field, J., said at page 452: "If this elevator opening rendered the sidewalk permanently dangerous to travellers, it was undoubtedly the duty of the city of Boston to put up a barrier, and if the defendants removed it they might be liable to travellers who were injured in consequence of its removal; but it has not yet been decided in this Commonwealth that at common law abutters are liable to travellers for injuries received in consequence of excavations made in their land outside the limits of a highway." The authority of the *Howland* and *McIntire* cases has not been impaired, and they have been followed or cited with approval in several decisions. See *Quigley* v. *Clough,* 173 Mass. 429, 430; *Mead* v. *Strauss,* 202 Mass.

399, 401; *Noyes* v. *Carr*, 228 Mass. 339; *Richardson* v. *Whittier*, 265 Mass. 478. Unless overruled they govern the case at bar and preclude recovery on the first and second counts. We are not prepared to overrule them. While there is much to be said for the rule of the Restatement, and the authorities supporting it are impressive, the doctrine of stare decisis is not to be ignored. See *Mabardy* v. *McHugh*, 202 Mass. 148, 151–152; *Duncan* v. *New England Power Co.* 250 Mass. 228, 234.

But the plaintiff earnestly argues that the case at bar can be distinguished from the cases discussed above in that the place where the plaintiff fell was maintained in violation of the building laws of Brookline. In support of this contention the plaintiff introduced in evidence building laws of the town of Brookline that were in force in 1906. They provided in part that no "structure, building or part thereof" was to be constructed "except in conformity with the provisions of this law"; that before the erection or alteration of any building could be made a detailed statement and plans of such proposed work must be filed with the building commissioner; that the erection or alteration of the building shall not be "proceeded with until said statements and plans shall have been so filed and approved by the commissioner"; and that the erection or alteration of such building when proceeded with, shall be constructed in accordance with such approved statements and plans.

It appears that plans and specifications for the construction of the defendant's premises were approved by the building department of Brookline and that a building permit was issued on August 18, 1906. The plaintiff offered in evidence a set of plans from the files of the Brookline building department dated June, 1906, which we infer were the plans of the defendant's building filed in accordance with the building laws mentioned above, but upon objection they were excluded subject to the plaintiff's exception. It was agreed that they could be referred to in the arguments before us. On the plans a gate was indicated at the entrance to the steps in the rear of the building. It is the plaintiff's contention that, inasmuch as these

plans called for a gate, the absence of such a gate on the night of the accident constituted a violation of the building laws of Brookline and furnished a basis for imposing liability on the defendant under all counts of her declaration. If this contention is correct the plans should not have been excluded.

But we think that the judge did not err in excluding the plans, for even if they had been admitted the evidence would not have warranted a finding that the defendant, by failing to maintain a gate at the place where the accident occurred, violated any by-law of the town of Brookline that was in effect at the time of the accident. There is nothing to show that the gate was not erected in 1906 in conformity with the plans. All that the evidence reveals is that it was not there after 1910. When it disappeared, if it had been erected, and under what circumstances, is left to conjecture. The building laws of Brookline in effect in 1906 were in evidence. But between 1906 and 1922, when the current code went into effect, the building laws "have been amended . . . on more than one occasion [and] there was a very substantial amendment made in 1913." None of the amendments to the building laws (with the exception of one section of the current code [1]) subsequent to 1906 was introduced in evidence. And, since they may not be judicially noticed (*Cerwonka* v. *Saugus*, 316 Mass. 152, 153), we do not know what they were. If we assume that the absence of a gate was unlawful in 1906, it does not follow that it would be in 1943 where, as here, the by-laws had been substantially amended. The burden of proving that the defendant violated the law was on the plaintiff. In the absence of evidence to the contrary "every presumption both of law and of fact is in favor of innocence and legality." *Janevesian* v. *Esa*, 274 Mass. 231, 233. *Broughton* v. *Boston & Maine Railroad*, 290 Mass. 80, 82. *Hall* v.

---

[1] That was § 19 of article 3 of the code adopted in 1922 which reads: "Before any building operation shall be begun the owner or lessee, or agent of either, or the architect or builder employed by such owner or lessee, employed in connection with the proposed work, shall file with the commissioner an application in duplicate for a permit on an appropriate blank to be furnished by the building department, together with such plans, structural detailed drawings and computations as the commissioner may require."

*Barton,* 290 Mass. 476, 480.   See *Hunt Drug Co.* v. *Hubert,* 298 Mass. 195, 196.   It is not contended that any statute was violated.   It follows that the plaintiff was not entitled to go to the jury on any count of the declaration.

*Exceptions overruled.*